EMMA LEE LONG, Appellant, v. ELISHA LONG, Respondent.

Springfield Court of Appeals, May 5, 1913.

DIVORCE: Appeal: Evidence: Deference to Finding of Trial Court.    While in a divorce proceeding the appellate court reviews the entire record, both the facts and the law, yet, where the evidence is in direct conflict, great deference is paid to the finding of the trial court who had the advantage of personal contact with the parties and their witnesses and was better prepared to judge their credibility and weigh their evidence. *Held*, that the finding for the defendant was not against the preponderance of the evidence.

Appeal from Jasper Circuit Court, Division Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Shannon & Phelps* for appellant.

(1)    A wife is a competent witness to protests made by her to her husband against excessive sexual intercourse.    Maget v. Maget, 85 Mo. App. 6.    (2) Excessive sexual intercourse amounts to cruelty entitling a wife to a divorce when it impairs her health. Maget v. Maget, 85 Mo. App. 6; Gardner v. Gardner, 58 S. W. 342; Mahew v. Mahew, 23 Atl. 966; Walsh v. Walsh, 61 Mich. 554; Melvin v. Melvin, 42 Am. R. 605; Cole v. Cole, 23 Iowa, 440.    (3)    The mere presence of the husband when the wife commits a crime raises a presumption that the wife acts by constraint of the husband, and in the absence of any other evidence the wife must be held guiltless in law.    State v. Miller, 162 Mo. 253.

*J. D. Harris* for respondent.

(1)    The general rule is well established that the wife cannot testify to confidential communications

occurring between herself and husband, in the absence of a third party. Schierstein v. Schierstein, 68 Mo. App. 205; King v. King, 42 Mo. App. 454; Brown v. Brown, 53 Mo. App. 453; Ayers v. Ayers, 28 Mo. App. 97. (2) The court permitted the wife to testify to the acts and conduct of the defendant in reference to sexual relations and alleged sexual demands, but properly refused to let her testify as to alleged conversations occurring between them. Ayers v. Ayers, 28 Mo. App. 97. (3) The exception to the rule of exclusion of privileged communications occurring between husband and wife, which plaintiff seeks to invoke, is not applicable to this case, because, if the court's ruling in this regard were error, the plaintiff is in no position to complain of it, for the reason plaintiff invited such error and a party cannot invite error, and then be heard to complain of it. Rourke v. Railroad, 221 Mo. 62; Smart v. Kansas City, 208 Mo. 204; Parker v. Street Railway, 140 Mo. App. 707. (2) Because the plaintiff did not save exceptions at the trial to the ruling of the court in that behalf. Huggins v. Jasper, 134 Mo. App. 5; Wycoff v. Hotel, 146 Mo. App. 554. (4) Where the spouse seeking the divorce is not an innocent party, the suit must fail. In the case at bar the plaintiff's own testimony, if it were believed, shows her to be a self-confessed, willful abortionist. Besides, the testimony of her own daughters shows that she was quarrelsome, fault-finding and over exacting in her behavior towards the defendant, and that she abandoned defendant without just cause or excuse. Miles v. Miles, 137 Mo. App. 38. (5) The burden rests upon the plaintiff in a suit for divorce to show, not only that she is injured by guilt of her spouse of an offense recognized by law as a ground for divorce, but that she is also innocent of breach of marital duty. To be entitled to divorce she must come into court with clean hands. Libbe v. Libbe, 157 Mo. App. 707. (6) In a divorce case, where the evi-

dence is conflicting, the findings of the trial court will not be disturbed on appeal, unless manifest error is made to appear. Munchow v. Munchow, 78 Mo. App. 99; Nichols v. Nichols, 39 Mo. App. 294; King v. King, 42 Mo. App. 454.

FARRINGTON, J.—This is a suit for divorce and alimony filed by Emma Lee Long against her husband, Elisha Long, in the circuit court of Jasper county. Unsuccessful there, she has perfected her appeal to this court, and the entire record is before us in the printed abstract.

In her petition, plaintiff sets forth the necessary and ordinary allegations of a petition for a divorce, and alleges that there were born of the mariage four children, ranging in age from eighteen to five years. Her charges are that her husband compelled her on frequent occasions, when she was pregnant, to submit to an abortion in order to destroy the foetus and thus remove the impediment that childbirth would interpose to the gratification of his sexual passion, and that he was brutal in his sexual demands and in his demands for her physical labor when in a pregnant condition or during the periods subsequent to eleven miscarriages which are alleged to have occurred; that he was jealous, and acted in such a way as to humiliate her in the presence of visitors at their home, called her vile names, accused her of stealing his money, and putting poison in his food, and that at one time he threatened to kill her as well as himself; and that he encouraged their daughters to associate with young men of bad repute and character.

Defendant in his answer admitted the marriage, but denied each and every other allegation of plaintiff's petition.

The plaintiff in her testimony detailed a story, which if true, would clearly entitle her to a divorce— and to the sympathy of all, as well. She swears that

she had some five or six operations performed for the purpose of effecting abortions, and that numerous miscarriages also occurred caused by the condition in which she was compelled to live, and that she was required to submit to the abortions by her husband. She states with reasonable certainty the times when the several abortions were committed, and gives the names of the physicians who performed the operations, and also the dates when the different miscarriages occurred; and there is no doubt that she did have some ten or eleven miscarriages resulting from operations and her physical condition. She testifies of having been compelled to go to bed with her husband early one evening while company was at their home, and that soon after retiring she became so nervous owing to his demands and accusations against her that she either swooned or went into hysterics and became at least partly unconscious. That she was in this condition, the visitors who were at their home testified, but the reasons she gave for her condition are wholly uncorroborated and are denied by the defendant. She testified that defendant said he would kill her and himself, but this is uncorroborated and is denied by the defendant. It is in evidence that she left her home several times, and once, at least, for the purpose of procuring a divorce, but afterward returned. She swears that she was required to do household work and physical labor while in the nervous and weakened condition caused by the manner in which she lived and that defendant's demands in this respect were brutal and were such as to render her condition intolerable.

The defendant as a witness denied all of plaintiff's testimony, except that she did have a number of miscarriages; he stated that he at times took her to town for the purpose of seeing physicians, but that he had no knowledge of any abortions being committed.

The testimony of witnesses for both the plaintiff and the defendant is that plaintiff was of a very nerv-

ous disposition and subject to some kind of spells that at times would make her hysterical and unconscious; that the defendant, so far as all outward appearances revealed, was a good provider and a good man—a good, hard-working man, and a fair provider for his family—some of the witnesses saying he provided better than many of his neighbors who were in practically the same circumstances.

The daughters, aged eighteen and fifteen years, were called by the trial judge and examined, and they swore that their sympathy was with their father in this divorce proceeding. They said he was a good, kind, father; and they testified that they loved their mother as much as they did their father, and, together with the defendant, expressed the desire that the plaintiff return to the home.

The trial judge in this proceeding was required to find from the evidence which of the principal actors was disclosing the true status of this family. Owing to the serious charges and their nature, the testimony was necessarily confined to a great extent to the utterances of the husband and wife—for no one could know what their most intimate relations were as man and wife—and there was a square conflict, the one affirming and the other denying. The trial judge was therefore put to the task of looking to the testimony of other witnesses on both sides in an attempt to ascertain whether, on the matters concerning which third parties could testify, the husband or the wife was best corroborated. After reading all the testimony in this voluminous record, it seems to us, as it evidently did to the trial judge, to tend strongly to corroborate the husband. The only serious conflict of the testimony of the witnesses with that of the defendant is found where one of the physicians as a witness swears that defendant came with the plaintiff to his office, and this was denied by the defendant; however, this testimony of the physician is in connection with testimony of a

most positive character on the part of the physician that the operation which he performed on this occasion was necessary in order to preserve the plaintiff's life, and that he did not know at the time whether or not she was pregnant, but that owing to her physical condition the operation was a necessity—all of which, of course, is no evidence that defendant took the plaintiff there for the purpose of having an abortion committed.

The evidence is irreconcilable. The conflict is such that a court could reasonably find either way. While it is true that in a divorce proceeding the appellate court reviews the entire record—the facts as well as the law—yet where the evidence is in direct conflict, great deference is paid to the finding of the trial judge who had the advantage of personal contact with the parties and their witnesses and was therefore better prepared to judge their credibility and weigh the evidence. [Wyrick v. Wyrick, 162 Mo. App. 1. c. 732, 145 S. W. 144.] The case was orally argued by learned counsel for appellant, and we have with a care commensurate with the issue involved examined this record, only to be convinced of the wisdom of the ruling of the trial judge that the evidence fails to preponderate in favor of the plaintiff's version of her married life.

It was said in oral argument that reconciliation is impossible—that plaintiff will not return to the indignities suffered during twenty years of married life —that her physical condition is such that sexual intercourse will endanger her life. This view of the situation forces the thought that divorce, after all, is not *always* a panacea for marital ills. It merely removes the barrier to another venture upon matrimonial seas, a venture attended with danger to this plaintiff's life. .

The judgment is affirmed. All concur.